UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:13-CV-418-GKS-GJK

DANIELLE TACORONTE

     Plaintiff,

v.

MARC B. COHEN, individually,
and GREENSPOON MARDER, P.A.,

     Defendants.

_____/

## DEFENDANTS MARC B. COHEN AND GREENSPOON MARDER, P.A.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Danielle Tacoronte's ("Tacoronte") "Response to Defendants' Motion for Summary Judgment" (the "Response")[1] fails to address or rebut a single one of the undisputed *material* facts set forth in Defendants' Summary Judgment Motion.[2] Her Response neglects to address or distinguish any of the legal authority Defendants cited. Rather, Tacoronte's "Response" is an almost 100% copy-and-paste version of her own summary judgment motion.[3] In fact, 45 of the 47 paragraphs in her summary judgment motion are reproduced verbatim in the 51 paragraph Response, which adds just six short paragraphs, several of which fail to cite to the record and consist of a single sentence.[4] Consequently, she does not establish any genuine issue of material fact to be tried. Moreover,

---

1. Doc. #81 Tacoronte's Response to Defendants Motion for Summary Judgment.
2. Doc. #70 Defendants Motion: filed on January 14, 2014, on behalf of Defendants. Defendants serve this Reply in accordance with this Court's *Milburn* Order (Doc. #72).
3. Doc. #74 Tacoronte's Summary Judgment Motion. Defendants' Opposition Response to Tacoronte's Summary Judgment Motion is not due to be filed until March 7, 2014. *See* Doc. #80.
4. Doc. #81 ¶¶ 1, 34, 39, 49, 50, 51.

1

she avoids discussing the provision of the Fair Credit Reporting Act to be applied here, *i.e.,* 15 U.S.C. **§ 1681b(a)(3)(A)**. Instead she uses **§ 1681b(3)(E)**, *a provision that ceased to exist in 1996* when the FCRA was amended and under which *Defendants here never asserted* a permissible purpose.[5] Defendants, therefore, are entitled to judgment as a matter of law.

## I.   PREFACE

Tacoronte's Response states that she has "withdrawn" Counts I and II of her Amended Complaint.[6] She, therefore, concedes that summary judgment on Counts I and II is appropriate, which leaves for disposition only Count III for alleged violations of the FCRA. With respect to the FCRA claim, the Response fails to go beyond the pleadings and fails to designate specific facts showing there is a genuine issue for trial. Tacoronte failed to file any affidavit with the Response or to acknowledge the admissions on file or her own prior deposition testimony. Instead, she offers bald assertions, argument of counsel and legal authority that is neither binding nor persuasive; thus, summary judgment is appropriate.

## II.  ARGUMENT

### A.   Tacoronte fails to identify a single genuine issue of material fact.

Tacoronte's reliance in the Response on her own "undisputed" facts unwittingly undermines not only her opposition to Defendants' Motion, but also her own summary judgment motion on her FCRA claim.[7] As the party resisting summary judgment, she had to

---

5.  Though, *see infra* footnote 36, Defendants here have a permissible purpose under both *current* sections of the FCRA.

6.  *See* Doc. #81 p. 1, ¶ 1. Previously, Tacoronte filed a "Motion to Dismiss" Counts I and II in her Amended Complaint "with prejudice" (Count I Fair Debt Collection Practices Act claim; Count II Florida Consumer Collection Practices Act claim.)   Doc. #82 p. 1, ¶ 1. As of this date the Court has not ruled on Tacoronte's "Motion to Dismiss".

7.  Tacoronte failed either in the Response or her motion to establish a factual basis for willful or negligent misuse or acquisition of a consumer report, *e.g.*, that Defendants obtained her report without a

2

discharge her burden by either citing to "particular parts" of the record materials establishing a "genuinely disputed" fact or showing that Defendants' materials do not establish the absence of a "genuine dispute."[8] The material she offered had to be capable of being offered at trial in an admissible form, and the same purported fact cannot be disputed for purposes of thwarting Defendants' Motion only to be presented as undisputed and material in her own motion.[9] Tacoronte relies on her own 27 allegedly "undisputed facts."[10] Yet, she does not cite to any particular record evidence showing or explaining why *Defendants' material facts* are in dispute or how *Defendants' material facts* create a genuine dispute.

For example, Defendants pointed to the evidence in the record which establishes that: 1) Tacoronte owed Wells Fargo $129,000 because she failed to repay her Equity Line Account Agreement;[11] 2) that Wells Fargo was entitled to collect upon that debt;[12] 3) that for purposes of collecting that debt, Wells Fargo was entitled to pull her credit;[13] 4) that Defendants represented Wells Fargo in the collection case against Tacoronte;[14] and 5) that Defendants pulled Tacoronte's credit report for purposes of collecting the debt owed to Wells Fargo[15] – ***Tacoronte neither addresses nor disputes a single one of these material facts, which are supported by the particular parts of the record Defendants cite***. "If the non-movant 'fails to properly address another party's assertion of fact' as required by Rule 56(c),

---

permissible statutory purpose. *Shepherd-Salgado v. Tyndall Federal Cred. Union*, No. 11–0427–WS–B, 2011 WL 5401993,at *3 (S.D. Ala. Nov. 7, 2011).

8. Fed. R. Civ. P. 56(c)(1)(A) and Fed. R. Civ. P. 56(c)(1)(B), respectively.

9. Fed. R. Civ. P. 56(c)(2).

10. Of these 27 allegedly "undisputed facts," 3 are pure legal conclusions (¶¶ 3-5), 4 contain no citation to the record whatsoever (¶¶ 3-5, 22), at least 2 are blatantly *in dispute* here (¶¶ 22, 29), and nearly all of the asserted facts cite to portions of the record which clearly do not support the "fact" being asserted.

11. Doc. #70 (see citations referenced in footnotes 4 and 5).

12. Doc. #70 p. 3 of 25 ¶ 2; *see also* Doc. 70-4 p. 13 of 15 lines 11 though 18.

13. Doc. #70 p. 3 of 25 ¶ 2.

14. Doc. #70 p. 3 of 25 ¶ 2; Doc. #70-3 ¶¶ 9, 10, 11, 13, 14, 15, 16, 17.

15. Doc. #70 p. 6-7 of 25 (*see* footnote 9); Doc. #70-4 pp. 12-13 of 15; Doc. #70-3 ¶ 13.

3

then the Court may[, as it should here,] 'consider the fact undisputed for purposes of the motion' and 'grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.'"[16]

**B.  Defendants had a permissible purpose for pulling Tacoronte's credit report.**

**1.  GM and Cohen pulled Tacoronte's report in the collection of her account as 15 U.S.C. § 1681b(a)(3)(A) permits.**

The material facts, which Tacoronte *does not address* in her Response, clearly show that *Defendants had a permissible purpose for pulling her credit report* – collecting on her unpaid debt owed to Wells Fargo. A "report may be provided 'in connection with . . . the . . . *review or collection of an account* of, the consumer.' . . . [i]n other words, this provision of the FCRA permits a debt collector to request a credit report if it uses the report to review or collect on an account."[17] **This is the precise and sole reason Cohen and GM pulled Tacoronte's credit report here**.[18] In deposition, Tacoronte was asked: "When Marc Cohen pulled your credit on January 26, 2013, was he trying to collect a debt that you owed to Wells Fargo?" she responded: "I would assume that that's what the purpose was for, **yes**."[19] Setting aside this frank admission, the material facts, when applied to the statutory language in section 1681b(a)(3)(A), show that the Defendants had a permissible purpose. Having a permissible purpose is an **absolute defense** to a FCRA claim.[20]

---

16. *Branch Banking and Trust Co. v. Parker*, No. 6:12–cv–539–Orl–37DAB, 2013 WL 980265, at *2 (M.D.Fla. Feb. 22, 2013).
17. *Pinson v. United Recovery Systems, LP*, No. 12–80792–Civ, 2013 WL 3717739, at *2 (S.D.Fla. Jul. 15, 2013) (emphasis in original) (citing 15 U.S.C. § 1681b(a)(3)(A)).
18. Doc. #81-2 p 48 of 113 (page 48 of Cohen's Deposition, lines 14-25).
19. Doc. #70-4 pp. 12-13 of 15 (excerpt from Tacoronte's Deposition; emphasis added).
20. "A showing of a permissible purpose is a complete defense." *Daniel v. Bluestem Brands, Inc.*, No. 13–11714, 2014 WL 81763, at *4 (E.D.Mich. Jan. 9, 2014).

4

Yet, Tacoronte tries to get around reality by contradicting her own testimony arguing in conclusory fashion that "the report Defendants obtained was impermissibly obtained" supposedly because there was no "existing consumer relationship" between Cohen's prior law firm CCCP/CCPM[21] and Tacoronte.[22] To support this conclusion, Tacoronte relies almost entirely on a single case – *Daley v. Haddonfield Lumber* ("*Daley*").[23] *Daley*, however, only applies the "business transaction" section 1681b(3)(E)[24] and does not mention the "review or collection of an account" – section 1681b(a)(3)(A), which is applicable in the instant case; nor does *Daley* involve a lawyer or law firm pulling a credit report on behalf of a creditor client, so, *Daley* simply cannot trump the clear language in section 1681b(a)(3)(A).

In *Daley,* one defendant, Zegley, was an employee of defendant Haddonfield Lumber Inc. ("HL") and a member of defendant Bay Club Condominium Association's Board ("Bay Club").[25] Zegley admitted that he requested Daley's credit report in his capacity as an employee of HL, but for use by Bay Club.[26] Daley alleged that defendants had no permissible purpose and that Zegley and HL gave Daley's credit report to Bay Club who then disclosed it to the public.[27] The *Daley* defendants claimed Bay Club had a permissible purpose based on Daley's desire to purchase a boat slip from it;[28] but, Daley argued that, because Bay Club used Zegley's position at HL to obtain the report, the reporting agency was led to believe that

---

21. Cohen, Conway, Copeland & Pavia which amended its name to Cohen, Conway, Pavia & Merrill.
22. Doc. #81 p. 15, ¶¶ 41 & 42.
23. 943 F. Supp. 464 (D. N.J. 1996).
24. Moreover, Congress amended the FCRA in 1996 and the amendment became law in 1997, after *Daley* had already been decided. As amended, section 1681b(3)(E) (the "business transaction" purpose) ceased to exist and is now in different form as section 1681b(a)(3)(F)(i) and (ii).
25. *Daley,* 943 F. Supp. at 465.
26. *Daley,* 943 F. Supp. at 465.
27. *Daley,* 943 F. Supp. at 465.
28. *Daley,* 943 F. Supp. at 465.

HL had the permissible purpose although the real purpose was to benefit Bay View, not HL.[29] So, Daley claimed that the report was obtained impermissibly, under false pretenses.[30]

The court, in analyzing whether there was a permissible purpose under the FCRA "business transaction" section 1681b(3)(E) found none as to HL, and because defendants had obtained the report for Bay Club, not HL, concluded it was pulled under false pretenses.[31] The court said that in order for there to be a "legitimate business need" to satisfy **1681b(3)(E)**, the requesting party (HL) had to have a "consumer relationship" with the subject of the request (Daley) and its absence required the court to find that there was no permissible purpose.[32] The court concluded that since HL pulled the report, HL had to have the consumer relationship with Daley, but no such relationship existed.[33]

Tacoronte argues in the Response that the conclusion in *Daley* applies here and, so, warrants a similar finding. She argues that she had no "***consumer relationship . . . with CCCP or CCPM as they ceased to exist in 2008***"[34] and so she concludes that Defendants' pulling of her report was done with an impermissible purpose and therefore under false pretenses. Tacoronte's leap in logic, however, ignores two central facts, which result in the *Daley* case holding having literally no applicability whatsoever to this case: 1) Defendants here (unlike in *Daley*) <u>never</u> argued a "legitimate business need" as a permissible purpose under the old version of 1681b(3)(E) or the present statute; rather, GM and Cohen explained that section **1681b(a)(3)(A)** (for collection of an account) provides the permissible purpose

---

29. *Daley,* 943 F. Supp. at 465.
30. *Daley,* 943 F. Supp. at 465.
31. *Daley,* 943 F. Supp. at 465.
32. *Daley,* 943 F. Supp. at 465.
33. *Daley,* 943 F. Supp. at 465. The court noted that the credit reporting agency released the report to HL believing that HL had the permissible purpose.
34. Doc. #81 p. 17 (¶¶ 43 & 44) of 22.

6

for pulling Tacoronte's report; and 2) the *Daley* case contains no discussion whatsoever of **1681b(a)(3)(A)**.[35]

Furthermore, neither *Daley* nor any other case cited by Tacoronte,[36] involves an attorney or law firm pulling a credit report on behalf of a creditor client who is owed a debt by the subject of the credit report. If the holding of *Daley* applied here, as Tacoronte argues, then literally no lawyer or law firm engaged in collection efforts for its creditor client would ever have a permissible purpose for pulling a credit report, which would make 1681b(a)(3)(A) meaningless. Tacoronte's argument that a lawyer must have a direct relationship with a debtor in order to have a permissible purpose before pulling the debtor's report based on *Daley* and outdated 1681b(3)(E) is, of course, incorrect, as explained next.[37]

### 2. Defendants pulled Tacoronte's credit in connection with the representation of one of her creditors in a collection action.

Defendants had a permissible purpose here because "[a]n attorney collecting a debt for a creditor client, including a party suing on a debt or collecting on behalf of a judgment creditor or lien creditor, has a permissible purpose to obtain a consumer report on the debtor

---

35. Moreover, the current statutory provision in 1681b(a)(3)(F), which replaced the prior 1681b(a)(3)(E), is, in fact, broader than and no longer as strict as the pre-1996 version of the "legitimate business need" standard applied in *Daley. See, e.g., Slantis v. Capozzi & Associates, P.C.*, No. 1:09–CV–00049–CCC, 2010 WL 3122868, at *2 n. 1 (M.D.Pa. Aug. 9, 2010).

36. Also, nearly every case cited by Tacoronte in her Response is dated prior to the 1996 amendments to the FCRA and involve secret "impermissible purposes." The cases, simply put, have no applicability here. Here, the record definitively establishes that Defendants at all times had a permissible purpose for pulling Tacoronte's credit. The cases Tacoronte cites (which will be more thoroughly analyzed in Defendants' response to her motion for summary judgment) do make clear that if there is no "impermissible purpose," then there can be no false pretenses. So, Defendants are entitled to judgment as a matter of law.

37. *See, e.g., Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 WL 206285 (N.D.Ill. Aug. 17, 1992) ("collection of allegedly unpaid accounts constitutes 'a legitimate business need' within the meaning of the statute"). *Allen* makes clear that had *Daley* involved an attorney pulling credit on behalf of a creditor client, the court in *Daley* most likely would have found a permissible purpose.

7

*to the same extent as the client.*"[38] In *Greenhouse v. TRW, Inc.*,[39] MMC hired a law firm (Fritch) to collect an unpaid debt Greenhouse owed MMC. Fritch (like Cohen here) had a contract with Equifax to obtain consumer reports for his collection practice. Fritch (as Cohen did here) certified that he would only request credit reports for a permissible purpose.[40] In connection with the MMC debt, Fritch obtained Greenhouse's report.[41] Fritch stated (as Cohen did here) that the only reason he pulled her report "was to aid in collecting the amount she owes to [MMC] . . ."[42] The court concluded there was **no** FCRA violation reasoning:

> It is uncontested that Fritch and Equifax entered into an agreement for Fritch to obtain consumer reports from Equifax in connection with Fritch's collection practice. It is also uncontested that Fritch obtained *Greenhouse's* consumer report from Equifax pursuant to this agreement, and Fritch has testified by sworn statement that the only reason he ever accessed Ms. Greenhouse's credit file was in connection with his efforts to collect on the Memorial Medical Center account. Because 15 U.S.C. § 1681b states that a consumer reporting agency may furnish a consumer report to "a person which it had reason to believe—(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the ... collection of an account of, the consumer," *the undisputed facts do not establish a violation of the FCRA.*[43]

---

38. *See* FTC Commentary, 16 C.F.R. Pt. 600 App. at Sec. 604(3)(E)(6)(e). Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) transferred rulemaking authority for a number of consumer financial protection laws to the Bureau of Consumer Financial Protection ("Bureau") as of July 21, 2011, including certain FTC rulemaking authority for the FCRA. The Bureau's interim final rule does not impose any new substantive obligations on persons subject to the existing FCRA regulations, but it is unclear whether the Bureau will adopt the foregoing FTC Commentary on the FCRA either in whole or part.

39. No. Civ.A. 96–1495, 1998 WL 61037, at *2 (E.D.La. Feb. 13, 1998) (same).

40. *Greenhouse*, 1998 WL 61037, at *2 ("individual certification" every time a consumer report is pulled is not required by the FCRA). There is one constant common element in the CCCP, CCCM, and GM law firms: Marc Cohen, who signed the original and only Equifax agreement and who made the certification.

41. *Greenhouse*, 1998 WL 61037, at *2.

42. *Greenhouse*, 1998 WL 61037, at *2.

43. *Greenhouse*, 1998 WL 61037, at *3. *See also Korotki v. Atty. Servs. Corp. Inc.*, 931 F. Supp. 1269, 1277-782 (D.Md. 1996), where the court held that "[e]ven under the narrowest interpretation of § 1681b(3)(E), defendants in this case had a permissible purpose to obtain Korotki's consumer *report because the business transaction involved here related to § 1681b(3)(A)*, one of the other purposes specifically enumerated by § 1681b(3)(A), *which authorizes a person attempting to collect an account of a consumer to obtain the consumer's credit report* . . . Thus, §1681b(3)(A) would appear to provide sufficient authority for defendants' actions. However, even if that not been so, the business transaction giving rise to the alleged debt involved Korotki, thus bringing the matter under and within §1681b(3)(E)." The FCRA provisions in *Korotki*

8

Here, Cohen (like Fritch) submitted a declaration and testified that his sole purpose for pulling Tacoronte's credit report was in connection with the collection of the debt Tacoronte owed to his creditor client, Wells Fargo.[44] And, there are no facts indicating otherwise.

Likewise, in *Kermani* – decided just two months ago – Kermani's creditor, Bank of America, hired a law office to collect a debt that Kermani owed.[45] Kermani sued the law office (and its attorney) alleging that there was no permissible purpose for pulling his credit report because he was not involved in a credit transaction with the law office.[46] The court, in applying section 1681b(1)(3)(A) easily rejected Kermani's argument, concluding:

> [T]he statutes do not limit permissible purposes to situations where consumers have had "direct dealings" with debt collectors. ***Indeed, "a collection agency retained by a creditor to collect on an account of the consumer" has a permissible purpose for obtaining that consumer's credit report***. Therefore, the ***relevant inquiry is whether Mr. Kermani was involved in a credit transaction with Bank of America, not whether he was involved in a credit transaction with Defendants [the Bank's lawyers]***.[47]

Numerous recent cases similar to *Kermani* (and this case) reach the same conclusion.[48]

CCCP and GM are both law firms of which Cohen was/is a shareholder and through which Cohen pulled credit reports on behalf of creditor/clients for the sole purpose of collecting debts owed to those creditors. Cohen is the *only individual* identified in the

---

1681b(3)(A) is the same language as is now are codified in §1681b(a)(3)(A) and 1681b(3)(E) language is found in amended form in1681b(a)(3)(F)(i).

44. Doc. #81-2 p 48 of 113 (lines 14-25); *See also* Doc. 70-3 ¶ 13.

45. *Kermani v. Law Office of Joe Pezzuto, LLC*, No. SACV 13-01375-CJC, 2014 WL 260650, at **1-2 (C.D.Ca. Jan. 23, 2014).

46. *Kermani*, 2014 WL 260650, at *2.

47. *Kermani*, 2014 WL 260650, at *2.

48. *See, e.g., Smith v. John P. Frye, P.C.*, No. 10-CV-3366, 2011 WL 748363, at **2-3 (N.D.Ill. Feb. 24, 2011); *Knox v. Weltman, Weinberg & Reis Col, LPA.*, No. 2:12-CV-223-JD, 2013 WL 3338311, at **4-5 (N.D.Ind. Jun. 28, 2013); *Fritz v. Capital Mgmt. Serv.s, LP*, No. 2:12-cv-1725, 2013 WL 4648370, at **3-5 (W.D. Pa. Aug. 29, 2013; *Weitz v. Wagner*, No. 07–cv–1106(KAM), 2009 WL 4280284, at *4 (E.D.N.Y. Nov. 24, 2009).

17239191v5.00154.0192

Equifax contract; and *he is the one who made the certification to Equifax* that he would only pull consumer reports for a permissible purpose. His name appears on all invoices from Equifax along with "*C/O Greenspoon Marder.*" Tacoronte candidly admitted that she knew that the Cohen in CCCP was the one-and-same Cohen in GM. She has not pointed to anything calculated that Cohen did to mislead her or Equifax about the Wells Fargo collection matter.[49] Hence, there can be no false pretenses as Tacoronte's own case *Daley* shows: "[t]o find liability under the false pretenses . . . a person must make '*a calculated attempt to mislead another in order to obtain information.*'" Tacoronte admits she was not misled, and she is not arguing that Equifax was either. Even if Defendants were really trying (which they clearly were not) to mislead Tacoronte and Equifax by hiding GM's name and that CCCP was dissolved,[50] it does not change the permissible purpose for which Cohen pulled her report or these facts: Tacoronte borrowed $130,000.00 from Wells Fargo, failed to repay it, and she knew that Wells Fargo hired Cohen to collect the money from her.[51]

## III.   CONCLUSION

As the foregoing makes clear, GM and Cohen are entitled to summary judgment.

---

49. *Daley*, 943 F. Supp. at 467-68; Doc. # 70-4 (Tacoronte's Depo. 61:3-23); Doc. #70-4 p. 8 of 15 (lines 7-20); *see also* Doc. #70-3 (Cohen's Declaration ¶ 14).

50. Tacoronte argues (Doc. 81 ¶ 50) that Cohen is "personally liable" for "intentional" fraud by obtaining her report by "false pretenses" under the FCRA, citing the *Segal* case. *Segal* is not, however, a FCRA case, but, rather, discusses common law fraud in the context of the "corporate shield" doctrine. In the Amended Complaint, Tacoronte uses the word "fraud" just once, in a ninety-nine word sentence, where she is alleging a grand conspiracy between GM and Cohen "to appear in court multiple times without legal authority and represent that they were the legally authorized attorney collecting a debt to obtain Plaintiff's credit report with a proper purpose, and to perpetrate a fraud and obtain an unlawful judgment against Tacoronte". Doc. #43, ¶ 59. Tacoronte, however, cannot hide from her own testimony: she acknowledged she owed Wells Fargo the debt, and she knew that Cohen was representing Wells Fargo well before Cohen ever pulled her report.

51. Ironically, the *Daley* court specifically noted that "a misrepresentation is non-actionable if the FCRA would permit the requesting party to receive the credit report for albeit an unstated but permissible purpose." 943 F. Supp. at 467-68. Despite the words in her own authority, Tacoronte argues that because the CCCP name not GM appears on her credit report the name is a misrepresentation and the false pretense that violates the FCRA. Her argument misses the point, *the focus of all the cases is on the permissible purpose*, which exists here under 1681b(a)(3)(A), not the name of the law firm attempting to collect a six-figure debt.

17239191v5.00154.0192

Respectfully submitted by:

/s/Richard W. Epstein
Richard W. Epstein, Esq.
Florida Bar No. 229091
richard.epstein@gmlaw.com
Meredith H. Leonard, Esq.
Florida Bar No. 69535
meredith.leonard@gmlaw.com
GREENSPOON MARDER, P.A.
200 East Broward Boulevard, Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954. 343.6958 (Facsimile)

*Attorneys for Defendants Marc B. Cohen
and Greenspoon Marder, P.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed with the Clerk of the Court by using CM/ECF service which will provide copies to all

counsel of record registered to receive CM/ECF notification to the parties below on this 3rd

day of March, 2014:

J. Marshall Gilmore, Esq.
1936 Lee Road, Suite 100
Winter Park, FL 32789
Phone: 407/629-7322
Fax: 407/599-3801
Email: mgilmore@mgilmorelaw.com

s/ Richard W. Epstein
RICHARD W. EPSTEIN

11

17239191v5.00154.0192